**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 24 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

TED KENTON OZBIRN,

     Defendant-Appellant.

No. 98-3205

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 97-CR-40023-1)**

---

Submitted on the briefs:[*]

Jackie N. Williams, United States Attorney; Gregory G. Hough, Assistant United States Attorney, Topeka, Kansas, for Plaintiff-Appellee.

Michael G. Katz, Federal Public Defender; Jenine Jensen, Assistant Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

---

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Before **BALDOCK, BRORBY** and **KELLY**, Circuit Judges.
**BRORBY**, Circuit Judge.

---

Defendant-Appellant Ted Ozbirn challenges his conviction on drug charges, asserting the district court improperly denied his motion to suppress evidence seized during a traffic stop. He claims the officers lacked sufficient grounds to stop him and that his continued detention violated his Fourth Amendment rights. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

BACKGROUND

On January 20, 1997, Mr. Ozbirn was driving a motor home on Interstate Highway 35 in Osage County, Kansas. Co-defendant James Feldman accompanied Mr. Ozbirn as a passenger in the vehicle. Kansas State Trooper Brian K. Smith noticed the motor home as it passed along the highway, and began to follow and observe the vehicle. After traveling behind the motor home for several minutes, Trooper Smith watched it drift onto the shoulder twice in less than a quarter of a mile. Concerned the driver might be falling asleep or otherwise impaired, Trooper Smith stopped the motor home to investigate and issue a warning ticket for failing to maintain a single lane of travel.

Approaching the side door on the passenger side of the motor home,

Trooper Smith encountered Mr. Ozbirn exiting the vehicle. He asked Mr. Ozbirn for his driver's license and vehicle registration. As Mr. Ozbirn went back inside the motor home to get the requested documents, Trooper Smith testified he could smell the odor of raw marijuana emanating from inside. However, he did not immediately enter the motor home to investigate, but instead waited for Mr. Ozbirn to return with his license and registration. Trooper Smith then took Mr. Ozbirn to his patrol car to issue him a written warning ticket for failing to maintain a single lane of travel.

After Trooper Smith finished issuing the warning, he asked Mr. Ozbirn if he could ask him a few more questions. Mr. Ozbirn agreed, and Trooper Smith asked whether he was hauling any illegal guns, drugs, weapons, or other contraband. Mr. Ozbirn told him he was not and then invited Trooper Smith to look inside the motor home if he wanted. Having received Mr. Ozbirn's consent, Trooper Smith entered the vehicle to conduct a search. He went to the back of the motor home where the smell of marijuana was strongest, and eventually discovered packets of marijuana hidden under a bed frame. Trooper Smith then arrested Mr. Ozbirn and the passenger, Mr. Feldman. A later custodial search of the motor home yielded additional amounts of marijuana hidden in a closet. In all, the officers discovered 863 pounds of marijuana inside the vehicle.

An indictment charged both Mr. Ozbirn and Mr. Feldman with possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846. Before trial, Mr. Ozbirn, joined by Mr. Feldman, moved to suppress the evidence seized from the search of the motor home arguing: (1) Trooper Smith lacked probable cause to believe he committed a violation of Kansas law, thereby invalidating the stop from the beginning; and (2) if the officer stopped him based on reasonable suspicion that he was distracted, sleepy or otherwise impaired, then the officer unlawfully subjected him to further questioning after he accomplished the initial purpose of the stop. The district court denied the motion, finding Trooper Smith reasonably believed he had probable cause to stop and cite Mr. Ozbirn for a traffic violation. The court also ruled that because probable cause supported the stop, it was unnecessary to address Mr. Ozbirn's alternative argument that Trooper Smith detained him too long after he determined he was alert and able to drive. The case proceeded to trial, and a jury convicted Mr. Ozbirn and Mr. Feldman on both charges.

On appeal, Mr. Ozbirn argues (1) the district court should have suppressed the evidence seized from the motor home because the circumstances did not give Trooper Smith sufficient grounds to stop the vehicle for failing to maintain a

single lane of travel, and (2) the district court erred by declining to rule on the issue of whether Mr. Ozbirn's continued detention violated his Fourth Amendment rights. In reviewing these allegations pertaining to the district court's denial of the motion to suppress evidence, we accept the district court's factual findings unless they are clearly erroneous, and review de novo its ultimate determination of reasonableness under the Fourth Amendment. *See United States v. Gregory*, 79 F.3d 973, 977 (10th Cir. 1996). Mr. Ozbirn does not challenge the district court's findings of fact, only its legal conclusions based on those facts. Thus, we accept the factual findings as articulated by the district court. [1]

DISCUSSION

Trooper Smith's decision to stop the motor home and detain Mr. Ozbirn and Mr. Feldman constitutes a seizure within the meaning of the Fourth Amendment. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Therefore, the stop is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996). Prior cases establish that a traffic stop is reasonable under the Fourth Amendment

---

[1] We grant Mr. Ozbirn's motion to supplement the record on appeal to add the videotape of Trooper Smith's stop and search of the motor home, and a missing page from the government's responses to Mr. Ozbirn pretrial motions.

at its inception if the officer has either (1) probable cause to believe a traffic violation has occurred, *see, e.g., Whren*, 517 U.S. at 810 (deciding the detention of a motorist supported by probable cause to believe the motorist committed a traffic violation is reasonable under Fourth Amendment), or (2) a reasonable articulable suspicion that "this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." *United States v. Botero-Ospina,* 71 F.3d 783, 787 (10th Cir.1995) (en banc) (internal quotation marks and citation omitted), *cert. denied*, 518 U.S. 1007 (1996). Thus, we must decide in this instance whether Trooper Smith had probable cause or, at a minimum, a reasonable, articulable suspicion of a violation necessary to validly effectuate the stop. *Id*. at 788 (either probable cause or reasonable suspicion is sufficient to support traffic stop).

As mentioned above, the district court found Trooper Smith had "ample probable cause" to stop the motor home driven by Mr. Ozbirn based on an observed violation of Kan. Stat. Ann. § 8-1522. This statute provides that "[w]henever any roadway has been divided into two (2) or more clearly marked lanes for traffic ... [a] vehicle shall be driven as nearly as practicable entirely within a single lane." Kan. Stat. Ann. § 8-1522. Mr. Ozbirn disputes the court's conclusion, relying on cases applying the same or similar statute and holding that

under certain circumstances, drifting outside the marked lane does not establish sufficient grounds for an officer to make a stop. *See, e.g., Gregory*, 79 F.3d at 978 (holding a single instance of veering onto an emergency lane is not sufficient to constitute a violation of a Utah statute virtually identical to Kan. Stat. Ann. § 8-1522); *United States v. Ochoa*, 4 F. Supp. 2d 1007, 1012 n.4 (D. Kan. 1998) (finding a single crossing onto the shoulder does not constitute a violation of Kan. Stat. Ann. § 8-1522, in part because the officers contributed to the vehicle going outside the lane). Based on these cases, he asserts the two brief incidents of drifting onto the shoulder did not give Trooper Smith probable cause to stop him for a traffic violation.

We agree that under the language of the Kansas statute, when an officer merely observes someone drive a vehicle outside the marked lane, he does not automatically have probable cause to stop that person for a traffic violation. The use of the phrase "as nearly as practicable" in the statute precludes such absolute standards, and requires a fact-specific inquiry to assess whether an officer has probable cause to believe a violation has occurred. Indeed, the cases cited by Mr. Ozbirn are testaments to this approach. However, decisions like *Gregory* do not establish an absolute standard or bright-line rule regarding what conduct constitutes a violation of statutes like Kan. Stat. Ann. § 8-1522, but instead

highlight the need to analyze objectively all the surrounding facts and circumstances to determine whether the officer had the probable cause necessary to justify the stop. *See Gregory*, 79 F.3d at 980 (focusing on the totality of the circumstances). Consequently, in determining whether Trooper Smith had probable cause to stop Mr. Ozbirn for a violation of Kansas traffic law, we engage in the same fact-specific analysis.

We conclude that under the particular facts and circumstances of this case, Trooper Smith had probable cause to stop the motor home for an observed violation of a Kansas traffic law. Even though the language of Kan. Stat. Ann. § 8-1522 makes it susceptible to rather arbitrary application by law enforcement officers, and the Kansas state court decisions referencing this statute do not specifically address what constitutes a violation, *see, e.g., State v. Vistuba,* 840 P.2d 511, 513 (Kan. 1992) (discussing in dicta violation of § 8-1522), the circumstances in this case persuade us Trooper Smith had probable cause to stop Mr. Ozbirn after he saw the motor home drift onto the shoulder twice within a quarter mile under optimal road, weather and traffic conditions. Unlike the factual scenario in *Gregory*, where the court found no violation occurred because the winding, mountainous road and windy conditions made it difficult for the defendant to keep his vehicle and trailer within a single lane, *see id*. at 978, the

present case involves no such adverse physical conditions existed. In fact, the record indicates, on the day Trooper Smith stopped the motor home, the weather was sunny and not unusually windy, and the road was smooth and dry with only a gentle curve and slight uphill grade. In addition, the defendant in *Gregory* drifted across the lane only once, *id.*, while Mr. Ozbirn drove onto the shoulder twice within a quarter mile. Finally, we note that unlike the factual scenario in *Ochoa*, the officer in this present case did not contribute to causing the motor home to drift onto the shoulder. *See id.* at 1012 n.4. Under these facts, we find Trooper Smith had the probable cause necessary to justify the stop.

Alternatively, even if Trooper Smith did not have probable cause to stop Mr. Ozbirn for a traffic violation, we conclude he had, at a minimum, a sufficient reasonable, articulable suspicion warranting an investigative stop under the principles articulated in *Terry v. Ohio*, 392 U.S. 1 (1968).[2] He observed the motor home drift onto the shoulder twice within a quarter mile without any adverse circumstances like road or weather conditions to excuse or explain the deviation. Such facts are sufficient to create a reasonable suspicion that the

---

[2] *Terry* sets forth a two-prong test for evaluating the reasonableness of an investigative stop. First, we ask "whether the officer's action was justified at its inception," and second, "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id*. at 20.

driver of the vehicle might be sleepy or impaired, and could present a risk of harm to himself and others. *See United States v. Lee,* 73 F.3d 1034, 1038 (10th Cir. 1996) (straddling center line supported reasonable suspicion that the driver was sleepy or intoxicated); *Botero-Ospina*, 71 F.3d at 788 (traveling under speed limit and straddling lane supported a reasonable suspicion the driver was impaired).

In addition to whether probable cause or a reasonable, articulable suspicion of criminal activity justified Trooper Smith's decision to stop the motor home at its inception, we must also determine if the continued detention of Mr. Ozbirn and Mr. Feldman after Trooper Smith issued the warning ticket violated their Fourth Amendment rights. [3] *Botero-Ospina*, 71 F.3d at 788 (even if an officer's initial traffic stop is "justified by the officer's observation of a minor traffic violation ... his investigation nevertheless will be circumscribed by *Terry*'s scope requirement"). As a general rule, once an officer's purpose in a traffic stop based on probable cause or reasonable suspicion is complete, the officer must let

---

[3] The district court did not address whether the circumstances justified his continued custody and the motor home search, and Mr. Ozbirn requests remand for the district court to perform further fact-finding and make legal conclusions on this issue. We conclude remand for further proceedings is unnecessary because no additional fact-finding is needed to resolve the ultimate legal issues involved.

the person go. *See United States v. Wood*, 106 F.3d 942, 945 (10th Cir. 1997) (in the case of a *Terry* stop based on reasonable articulable suspicion, the detention must last "no longer than necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification"). In other words, once Trooper Smith completed issuing Mr. Ozbirn the warning for failing to maintain a single lane of travel and ensured he was not driving while impaired, Trooper Smith's justification for detaining Mr. Ozbirn ended, and he should have permitted him to continue on his way. However, this general rule is subject to a significant exception permitting an officer to engage in further questioning unrelated to the initial stop if he has probable cause, the consent of the suspect, or, at a minimum, a reasonable suspicion of criminal activity. *Lee*, 73 F.3d at 1038-1039) (probable cause or consent necessary to continue detention of suspect after completion of objectives of initial *Terry* stop); *see United States v. Brignoni-Ponce,* 422 U.S. 873, 881-82 (1975); *United States v. Villa-Chaparro*, 115 F.3d 797, 801 (10th Cir.) ("An investigative detention may be expanded beyond its original purpose ... if during the initial stop the detaining officer acquires 'reasonable suspicion' of criminal activity."), *cert. denied*, 118 S. Ct. 326 (1997).

The record indicates that when Trooper Smith first encountered Mr. Ozbirn

and waited for him to retrieve his license and registration from the motor home, he could smell a strong odor of raw marijuana emanating from inside the vehicle. Based on this fact alone, we conclude whatever Trooper Smith's initial purpose for making the stop may have been – whether to give a warning ticket for failing to maintain a single lane of travel, or to ensure the driver was not impaired, or both – before he completed his initial investigation he at least had the reasonable suspicion necessary to justify further detention and questioning of Mr. Ozbirn and Mr. Feldman. *See United States v. Corral*, 823 F.2d 1389, 1393 (10th Cir. 1987) (officers had reasonable and articulable suspicion that the individuals might be involved in violation of the narcotics laws when they recognized the odor of marijuana emanating from the vehicle after defendant rolled down the window), *cert. denied*, 486 U.S. 1054 (1988). Moreover, we conclude the odor of marijuana Trooper Smith detected from the vehicle, along with the other suspicious conduct cited by the government, including Mr. Ozbirn and Mr. Feldman's nervous, talkative, and overly-friendly behavior, and vague description of their travel plans also satisfies the higher standard of probable cause. *See United States v. Downs,* 151 F.3d 1301, 1303 (10th Cir. 1998) (concluding odor of raw marijuana alone may satisfy the probable cause requirement to search a vehicle or baggage), *cert. denied*, 119 S. Ct. 1483

(1999). [4]  Thus, we hold the troopers had reasonable suspicion and probable cause to further detain and question Mr. Ozbirn and Mr. Feldman.

Finally, even if we assume *arguendo* Trooper Smith did not have probable cause or even the reasonable suspicion necessary to continue to detain and question Mr. Ozbirn and Mr. Feldman, express consent also suffices to validate the continued detention and search. The record indicates Mr. Ozbirn willingly agreed to answer additional questions and invited Trooper Smith to have a look inside the motor home, without Trooper Smith even asking for permission. Mr. Ozbirn's own statements demonstrate he consented without threat or coercion to both the additional questions and the search of the motor home. [5]

CONCLUSION

---

[4]  Although insufficient to create probable cause standing alone, factors like nervousness, overly friendly behavior, and vague descriptions of travel plans may still serve to bolster the finding of probable cause when considered as part of the totality of the circumstances. *See United States v. Salzano*, 158 F.3d 1107, 1114 (10th Cir. 1998) (although insufficient by themselves, the individual factors relied on by the officer in making the stop "must be considered in the aggregate and in the context of the totality of the circumstances").

[5]  Mr. Ozbirn also claims remand is necessary to address whether Trooper Smith exceeded his consent when he dismantled the bed frame to discover the marijuana contained inside. We reject this position because, as we have already decided, Trooper Smith had probable cause to search the motor home even without Mr. Ozbirn's consent.

We conclude that under the circumstances, Trooper Smith had either probable cause to stop Mr. Ozbirn for committing a violation of a Kansas traffic law, or the reasonable articulable suspicion necessary to justify an investigatory stop. In addition, reasonable suspicion, probable cause, and consent validate the continued detention of Mr. Ozbirn and Mr. Feldman, and both probable cause and consent justified the search of the motor home after Trooper Smith completed his investigation and issuance of the warning. For these reasons, we **AFFIRM** the decision of the district court denying Mr. Ozbirn's motion to suppress.