**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 8 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

FELIPE JESUS SAUCEDO,

    Defendant-Appellant.

No. 00-1100
(D.C. No. 99-CR-175 )
(District of Colorado)

**ORDER AND JUDGMENT**[*]

Before **McWILLIAMS**, Senior Circuit Judge, **ANDERSON**, Senior Circuit Judge, and **BALDOCK**, Senior Circuit Judge.

On May 18, 1999, at approximately 8:45 a.m., Colorado State Patrol Trooper Steven Ortiz was patrolling Interstate 25 northward from Walsenberg towards Pueblo, Colorado. Another vehicle was also proceeding north from Walsenberg towards Pueblo, driven by Felipe Jesus Saucedo. Saucedo was driving in the left lane ahead of Ortiz. Ortiz thereafter observed the Saucedo vehicle pass another motorist who was in the right hand lane. Ortiz decided to stop Saucedo's vehicle because he believed Saucedo was

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.

driving carelessly and had failed to drive in a single lane. He also observed that in passing the car in the right hand lane, Saucedo had driven onto the right shoulder of the highway. Accordingly, a stop was made. Conversation ensued between Ortiz and Saucedo, and his passenger, Claudia Santos-Lopez. Although there was initially some problem with Saucedo's driver's license and car registration, within a few minutes that was resolved. Ortiz, after giving Saucedo a verbal warning, advised Saucedo that he was free to leave, but suggested that his passenger drive, since Saucedo said he was "tired."

Before Saucedo left, Ortiz asked him if there were any drugs or weapons in the car and Saucedo said "no." Ortiz next asked Saucedo for permission to search the car and Saucedo answered "yes." Saucedo then read and signed a consent to search form which Ortiz had filled out on the "Spanish side of the form," Saucedo having indicated that he "preferred Spanish." (Ortiz is fluent in Spanish). A search of the vehicle disclosed a large quantity of methamphetamine in the trunk, whereupon Ortiz arrested Saucedo. As he was transporting Saucedo to police headquarters, Saucedo volunteered (not in response to any questioning) that his passenger had "nothing to do with it." Ortiz told Saucedo to be quiet and wait until they got to headquarters. Once there, Saucedo was given a *Miranda* warning in Spanish, and Saucedo then indicated he was willing to answer questions. At that time, Saucedo admitted, *inter alia*, that he was transporting drugs from California to Minnesota, and again said that his passenger, Santos-Lopez "had nothing to do with it."

Prior to trial, Saucedo filed a motion to suppress. At the hearing on the motion, both Ortiz and Saucedo testified. The district court in a detailed order denied the motion to suppress. Saucedo then entered a conditional plea of guilty to a conspiracy charge, pursuant to Fed. R. Crim. P. 11(a)(2), and was thereafter sentenced to imprisonment for 135 months, 5 years of supervised release, and a fine of $100.00.

Saucedo's first argument is that Ortiz' stop of the vehicle he was driving was unreasonable and in violation of his Fourth Amendment rights. In an appeal of a district court's denial of a motion to suppress, our standard of review is to accept the district court's findings of fact unless such are clearly erroneous, and to view the evidence in a light most favorable to the government. *United States v. McAlpine*, 919 F.2d 1461, 1463 (10th Cir. 1990). However, the ultimate question of the reasonableness of a police officer's actions, as required by the Fourth Amendment, is one of law which is reviewed de novo. *United States v. Ross*, 920 F.2d 1530, 1533 (10th Cir. 1990). Further, in determining whether the initial stop of a motor vehicle by a police officer is reasonable under the Fourth Amendment, the government is not required to show that a traffic violation actually occurred; rather, it is sufficient to show that the officer making the stop has a "reasonable, articulable suspicion" that a traffic violation has occurred, or was occurring. *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998)(citing *U.S. v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995)).

The district court in its order denying Saucedo's motion to suppress first held that

Ortiz had, at the very minimum, a "reasonable articulable belief" that Saucedo had violated traffic laws. The district court then went a step further and found that Ortiz had probable cause to believe that Saucedo was in violation of traffic laws and that such being the case, he acted "reasonably," within the Fourth Amendment, in his stop of the vehicle. In so doing, the district court found as follows:

> He [Ortiz] noticed a vehicle in front of him, which turned out to be the vehicle driven by the defendant Saucedo. It was apparently passing another vehicle. In so doing, it made an erratic lane change in front of the Trooper and of the vehicle it was passing, swerved on to the shoulder as though the driver was going to go out of control. The Trooper described his conduct as being careless and bordering on reckless conduct in driving the vehicle. Accordingly, he elected to stop the vehicle and did so.

In concluding that Ortiz made a lawful stop of the vehicle driven by Saucedo, the district court relied on *United States v. Ozbirn*, 189 F.3d 1194 (10th Cir. 1999). On appeal, counsel argues that the district court's reliance on *Ozbirn* was misplaced, and that the present case is more like *United States v. Gregory*, 79 F.3d 973 (10th Cir. 1996). We agree with the district court that the present case is quite similar to *Ozbirn*. We note that in *Ozbirn,* we distinguished that case from *Gregory*. *Ozbirn*, 189 F.3d at 1198. The facts in the instant case come within *Ozbirn*. In short, the district court's finding that Ortiz had probable cause to stop Saucedo, or at the very least had a "reasonable articulable suspicion" that Saucedo had violated traffic laws, is supported by the record and under applicable authorities constituted a valid stop.

- 4 -

Saucedo's next argument is that he did not voluntarily consent to a search of his vehicle. At the hearing on the motion to suppress, both Ortiz and Saucedo testified. Saucedo was not fluent in English and an interpreter at that hearing was used. The testimony of Ortiz and Saucedo differed in several respects. On the consent to search issue, the district court basically accepted Ortiz' version of events, which it had the right to do.[1] The district court in its order denying Saucedo's motion to suppress stated that there was "no question in the court's mind that this consent to search was obtained by the Trooper and it was obtained voluntarily." In this connection, Ortiz testified that after he returned identification papers to Saucedo and informed him that he and his companion were free to go, he asked Saucedo if there were any drugs or weapons in the car, and that Saucedo responded "no." Ortiz said he then asked Saucedo if he could search the car and that Saucedo responded "yes." Ortiz stated that he then obtained a consent to search form from his vehicle which form was printed in both English and Spanish. Saucedo indicated that he preferred the Spanish side of the form, whereupon Ortiz then filled out the consent to search form, presented it to Saucedo, and Saucedo read and then signed the form.

In *United States v. West*, 219 F.3d 1171, 1176-7 (10th Cir. 2000), we spoke about the police questioning of a driver after he had been told he was "free to leave" as follows:

---

[1]When "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Toro-Pelaez*, 107 F.3d 819, 824 (10th Cir.), *cert denied,* 522 U.S. 845 (1997)(citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

After the initial justification for the stop was legally concluded, Deputy Barney continued to question West. An officer may extend a traffic stop beyond its initial scope if the suspect consents to further questioning or if the detaining officer has a particularized and objective basis for suspecting the person stopped of criminal activity. A traffic stop may become a consensual encounter, requiring no reasonable suspicion, if the officer returns the license and registration and asks questions without further constraining the driver by an overbearing show of authority. 'A consensual encounter is the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement officer.' Whether an encounter can be deemed consensual depends on 'whether the police conduct would have conveyed to a reasonable person that he or she was not free to decline the officer's requests or otherwise terminate the encounter.' An officer is not required to inform a suspect that he did not have to respond to his questioning or that he was free to leave. Therefore, an unlawful detention occurs only when the driver has an 'objective reason to believe he or she is not free to end the conversation with the officer and proceed on his or her own way.' (Citations omitted.)

*Id.* at 1176-7.

Saucedo argues, as was argued in *West*, that even if his post-stop conversation with Ortiz was consensual, he did not voluntarily consent to a search of his car. In that regard, we spoke in *West* as follows:

Whether a party has voluntarily consented to a search is a question of fact that the district court must evaluate in view of the totality of the circumstances. Because voluntariness is a question of fact, the court must accept the district court's finding unless it is clearly erroneous.

*Id.* at 1177.

As indicated, the district court found, in effect, that Saucedo's conversation with

Ortiz after the latter told him he was free to go was consensual in nature and that the verbal and written consent given by Saucedo under the totality of the circumstances, was voluntary in nature. There is nothing in the record to indicate that Saucedo's consent to the search resulted from "an overbearing show of authority." In short, the record supports the district court's finding that the consensual encounter and the consent to search were voluntary, and we believe such is in accord with applicable authorities.

Saucedo's final argument is that the *Miranda* warnings given him were inadequate and therefore he did not voluntarily, knowingly and intelligently waive his *Miranda* rights. The statement made by Saucedo en route to police headquarters that his companion was not involved was volunteered and not in response to any question. The statements made at the police headquarters were after Ortiz verbally informed Saucedo, in Spanish, of his *Miranda* rights. In sum, the record and applicable authorities support the district court's findings that the *Miranda* warnings were adequate and that Saucedo did voluntarily waive those rights. After answering some questions propounded by Ortiz, Saucedo later declined to submit to further questioning.

A recent case, *United States v. Bustillos-Munoz*, 235 F.3d 505 (10th Cir. 2000), is almost on all fours with the present case. The facts in *Munoz* are strikingly similar to those in the instant case. In *Munoz*, we rejected the same arguments that Saucedo advances here: (1) the initial stop was improper, (2) the consent to search was invalid, and

(3) the *Miranda* warnings were insufficient.  The present case is almost a duplicate of *Munoz*.

Judgment affirmed.

Entered for the Court,


Robert H. McWilliams
Senior Circuit Judge
