**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 9 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMES CHRISTOPHER LANDSHOF,

Defendant - Appellant.

No. 02-3419
(D. Ct. No. 02-CR-40004-SAC)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **EBEL**, and **BRISCOE**, Circuit Judges.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant-Appellant, James Christopher Landshof, pled guilty to one count of possession of marijuana with intent to distribute, in violation of 21 U.S.C.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

§ 841(a)(1), reserving his right to appeal the district court's denial of his motion to suppress.[1]  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I.  Discussion[2]

### A.    Standard of Review

We review a district court's denial of a motion to suppress in a light most favorable to the government, considering the totality of the circumstances.  *U.S. v. Long*, 176 F.3d 1304, 1307 (10th Cir. 1999) (citations omitted).  "We accept the district court's factual findings unless those findings are clearly erroneous." *Id.* (citations omitted).  The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law, which we review de novo.  *Id.* (citations omitted).

### 1. Overview of Applicable Fourth Amendment Law

In reviewing the constitutionality of traffic stops under the Fourth

---

[1] *United States v. Landshof*, No. 02-40004-01-SAC, 2002 WL 1162420 (D. Kan. April 23, 2002) (order denying defendant's motion to suppress).

[2] The events in this case arise from a traffic stop by Kansas Highway Patrol Trooper Joseph Ziegler on February 13, 2001, which led to a search of Landshof's vehicle and the discovery of 236 pounds of marijuana.  The facts in this case are few and, for the most part, uncontested.  As the district court's order sets forth the relevant facts in ample detail, *see United States v. Landshof*, No. 02-40004-01-SAC, 2002 WL 1162420 (D. Kan. April 23, 2002), we do not recount them in full here.

Amendment, we conduct a two-step inquiry. First, we must determine "whether the officer's action was justified at its inception." *United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1483 (10th Cir. 1994). Second, we must consider "whether the action was reasonably related in scope to the circumstances that first justified the interference." *Id.* Further detention or questioning, unrelated to the traffic stop, is only permissible (1) where the officer has "objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring," or (2) " if the initial detention has become a consensual encounter." *Id.* (citations omitted).

    2. <u>Whether Trooper Ziegler's Detention of Landshof was Reasonable at Its Inception.</u>

"[A] detaining officer must have an objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring before stopping [an] automobile." *United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir. 1993) (citation omitted). In this case, Trooper Ziegler observed Landshof's vehicle weave within the traffic lane and cross approximately six inches over the right-side fog line. Further, according to Trooper Ziegler's testimony, Landshof was operating his vehicle under optimal road, weather, and traffic conditions. Finally, Trooper Ziegler noticed that Landshof appeared tired. Based on these observations, Trooper Ziegler had objectively reasonable, articulable suspicion

- 3 -

that Landshof was operating his vehicle in violation of Kan. Stat. Ann. § 8-1522.[3]

*Compare United States v. Ozbirn*, 189 F.3d 1194, 1198 (10th Cir. 1999) ("[officer] had probable cause to stop [defendant] after he saw the motor home drift onto the shoulder twice within a quarter mile under optimal road, weather and traffic conditions"), *with United States v. Gregory*, 79 F.3d 973, 978 (10th Cir. 1996) (finding no reasonable suspicion because an "isolated incident of a vehicle crossing into the emergency lane of a roadway . . . . [where] road was winding, the terrain mountainous and the weather condition was windy" does not constitute a violation of the relevant Utah traffic law) (citation omitted). Alternatively, at a minimum, Trooper Ziegler's observations were "sufficient to create a reasonable suspicion that . . . [Landshof] might be sleepy or impaired, and could present a risk of harm to himself and others." *Ozbirn*, 189 F.3d at 1199 (citing cases).

Based on the above, we conclude that Trooper Ziegler's initial stop of Landshof was reasonable under the Fourth Amendment. [4] *See Ozbirn*, 189 F.3d at

---

[3] Under Kan. Stat. Ann. § 8-1522, "[w]henever any roadway has been divided into two (2) or more clearly marked lanes for traffic, . . . . vehicle[s] shall be driven as nearly as practicable entirely within a single lane . . ."

[4] We reject Landshof's invitation to revisit the question of whether probable cause, rather than reasonable suspicion, must support a routine traffic stop. As Landshof acknowledges, we rejected an identical argument in *United States v. Callarman*, 273 F.3d 1284 (10th Cir. 2001).

1198-99.

3. <u>Whether Trooper Ziegler's Actions Were Reasonably Related in Scope to the Circumstances That Initially Justified the Detention.</u>

"During a routine traffic stop, the detaining officer may request a driver's license and vehicle registration, run a computer check on the car and driver, and issue a citation." *Soto*, 988 F.2d at 1554 (citations omitted). In addition, the detaining officer may question the vehicle's occupants regarding their travel plans. *United States v. Williams*, 271 F.3d 1262, 1267 (10th Cir. 2001).

Once an officer has issued a citation in a traffic stop, "'[i]f the driver produces a valid license and proof of right to operate the vehicle, the officer must allow him to continue on his way without delay for further questioning.'" *Soto*, 988 F.2d at 1554 (citing *United States v. Pena*, 920 F.2d 1509, 1514 (10th Cir. 1990)). Further detention, unrelated to the traffic stop, is permissible in only two instances: (1) if the officer has "objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring"; or (2) "if the initial detention has become a consensual encounter." *Gonzalez-Lerma*, 14 F.3d at 1483 (citations omitted).

In reviewing reasonable-suspicion determinations, we must consider the "'*totality of the circumstances*' of each case to see whether the detaining officer ha[d] a 'particularized and objective basis' for suspecting legal wrongdoing."

*United States v. Arvizu*, 534 U.S. 266, 273 (2002) (emphasis added and citations omitted). Reasonable suspicion may exist, even if "each of the[] factors alone is susceptible of innocent explanation." *Id.* at 277. In other words, "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Id.*

In this case, Trooper Ziegler possessed reasonable, articulable suspicion of criminal activity sufficient to justify the fifteen-minute detention of Landshof's automobile,[5] based on numerous observations he made during the routine traffic stop. First, Trooper Ziegler testified that Landshof appeared extremely nervous during the encounter, and this nervousness did not diminish after Ziegler informed Landshof that he would not issue a citation. *See United States v. Kopp*, 45 F.3d 1450, 1454 (10th Cir. 1995) (holding defendant's nervousness, in part, presented officer with reasonable, articulable suspicion of criminal activity); *Soto*, 988 F.2d at 1556 (same).[6] Second, Trooper Ziegler detected the odor of an air

---

[5] We have previously held that reasonable, articulable suspicion can justify the limited detention of an automobile. *See United States v. Brown*, 24 F.3d 1223, 1226 (10th Cir. 1994) ("[A]ny 'investigative detention' of the [automobile] was based on reasonable suspicion and 'was properly limited in scope,' only lasting about 30 minutes at the most.").

[6] Conversely, we have held that an officer may not rely upon his "sixth sense" or that there was "tension in the air" as a reasonable, articulable suspicion of criminal activity. *See United States v. Fernandez*, 18 F.3d 874, 881 (10th Cir. 1994).

freshener, which he knew was often used to mask the odor of marijuana, based on his law-enforcement training. *See*, *e.g.*, *United States v. Villa-Chaparro*, 115 F.3d 797, 802 (10th Cir. 1997) ("Although the scent of a masking agent alone is insufficient to establish reasonable suspicion, we have repeatedly held that air freshener coupled with other indicia of criminal activity supports a reasonable brief inquiry") (internal quotation marks and quotation omitted); *United States v. Stone*, 866 F.2d 359, 362 (10th Cir. 1989) (finding reasonable suspicion based, in part, on odor of Patchouli oil). Third, Trooper Ziegler testified that Landshof's unusual travel plan—flying from New York to St. Louis, renting a car, and then driving to Denver [7]—coupled with the implausibility of carrying his three large suit cases through an airport, further heightened his suspicions. [8] *See Kopp*, 45 F.3d at 1454 (finding reasonable suspicion based, in part, on implausibility of defendant's explanation of his travel plans and purpose). Fourth, Landshof told Trooper Ziegler that he was a computer salesman, a statement that was inconsistent with certain aspects of Landshof's physical appearance. *Cf. United*

---

[7] Landshof notes that "his stop in St. Louis could have been to see another client" or he "may simply have been interested in seeing the Missouri and Kansas landscape." Landshof did not, however, offer any such explanation to Trooper Ziegler in response to his inquiry.

[8] Trooper Ziegler testified as follows: "I posed him with a couple questions; why didn't you fly straight into Denver, why do you have these big cases. He didn't really have any answers for me and that kind of added a little bit more to it . . . ."

*States v. Turner*, 928 F.2d 956, 959 (10th Cir. 1991) ( "Defendant claimed that he was an auto mechanic, but the officer observed that his hands were well-manicured and did not appear to be in the condition of someone who works as an auto mechanic"). Fifth, Trooper Ziegler observed that the back of Landshof's vehicle appeared weighted down, sagging some three to four inches. [9] *See*, *e.g.*, *United States v. Sharpe*, 470 U.S. 675, 683 n.4 (1985) (finding reasonable suspicion of drug-trafficking based, in part, on the fact that "pickup truck appeared to be heavily loaded"); *United States v. Summerville*, 477 F.2d 393, 395 (5th Cir. 1973) (finding probable cause based, in part, on fact that "vehicle was riding low 'as if it were weighted down'").

## II. Conclusion

In sum, Landshof's argument employs the same "divide and conquer" methodology recently rejected by the Supreme Court in *United States v. Arvizu*, 534 U.S. 266, 274 (2002). In light of the totality of the circumstances, we cannot say that the district court committed reversible error in concluding that Trooper Ziegler had reasonable, articulable suspicion of criminal activity. [10] Accordingly,

---

[9] Landshof argues that the district court erred in accepting Trooper Ziegler's testimony on this point. Although we disagree, we note that even if Landshof is correct, the remaining factors would still support a finding of reasonable suspicion.

[10] Although Landshof does not challenge the use of the drug dog or the

(continued...)

- 8 -

we AFFIRM the district court's denial of Landshof's motion to suppress and

AFFIRM Landshof's conviction under 21 U.S.C. § 841(a)(1).

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge

---

[10](...continued)
search that followed, we note that both of these subsequent events stayed within
the boundaries of the Fourth Amendment.