**F I L E D**

**UNITED STATES COURT OF APPEALS**

**May 24, 2007**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> DUPRE LONELL JACKSON, <br><br> Defendant-Appellant. | No. 06-8072 <br> District of Wyoming <br> (D.C. NO. 06-CR-083-B) |
| UNITED STATES OF AMERICA, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> GARRETT DAVARRASS SMITH, <br><br> Defendant-Appellant. | No. 06-8073 <br> District of Wyoming <br> (D.C. NO. 06-CR-083-B) |

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **McWILLIAMS**, and **McCONNELL**, Circuit Judges.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

On January 30, 2006, Dupre Lonell Jackson and Garrett Davarrass Smith were driving cross-country in their borrowed Honda Accord, two friends out on the road listening to music, seeing the country, and smuggling cocaine. Their illicit adventure ended on Interstate 80 outside Pine Bluffs, Wyoming. Trooper Dave Chatfield stopped the pair for speeding; one question led to another and then to a search, and within twenty minutes, both men were under arrest.

Mr. Jackson and Mr. Smith pled guilty to possession with intent to distribute 500 grams or more of cocaine, as well as aiding and abetting, 21 U.S.C. § 841(a)(1) and (b)(1)(B), 18 U.S.C. § 2. The defendants conditioned their pleas on the right to appeal the district court's denial of their motions to suppress. On August 28, 2006, the trial court sentenced Mr. Jackson to thirty months imprisonment and four years supervised release. Mr. Smith was sentenced to sixty months in prison and four years supervised release. Mr. Smith filed a timely notice of appeal on September 1, 2006, challenging both the district court's denial of his suppression motion and its imposition of the statutorily mandated minimum sentence. Mr. Jackson followed suit seven days later, though he challenges only the district court's suppression ruling.[1] We find that the district court properly denied the defendants' motion to suppress and did not err by sentencing Mr.

---

[1] The district court determined Mr. Jackson qualified for the so-called "safety-valve" provision of 18 U.S.C. § 3553(f), which allows the court to depart downward from the mandatory minimum in certain instances.

Smith to the statutory minimum. Accordingly, we AFFIRM the judgment of the district court.[2]

## I. Motion to Suppress

The Fourth Amendment protects the right of citizens "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has made clear that a traffic stop "constitute[s] a 'seizure'" within the meaning of the Fourth Amendment, however brief the detention may be. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). These seizures do not offend the Constitution, however, so long as they are reasonable. *See Brigham City v. Stuart*, 126 S.Ct. 1943, 1947 (2006) ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'"). Because "a routine traffic stop is more analogous to an investigative detention than [to] a custodial arrest," *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998), we judge the reasonableness of these stops by the principles developed for investigative detentions in *Terry v. Ohio*, 392 U.S. 1 (1968). In brief, to be reasonable, the law enforcement officer's action must have been "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. In keeping with the

---

[2] Appellants' motions for a continuance of oral argument were denied. Counsel are reminded that motions for continuance of argument should be filed as soon as scheduling conflicts are known, and that in the absence of special circumstances such motions, if made after the members of the Court have engaged in substantial preparation in the case, are disfavored.

deference owed the district court, we view the evidence in the light most favorable to the government and accept the district court's finding of facts unless clearly erroneous. Fourth amendment reasonableness we decide *de novo*. *United States v. Gregoire*, 425 F.3d 872, 875 (10th Cir. 2005).

Detention of a motorist is justified at its inception in two circumstances: When the officer has "(1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." *United States v. Ozbirn*, 189 F.3d 1194, 1197 (10th Cir. 1999) (internal quotation marks and citations omitted). Neither defendant challenges his detention at its inception, for good reason. Trooper Chatfield clocked the defendants' vehicle traveling seventy-nine miles per hour in a seventy-five mile-per-hour speed zone, a relatively minor violation of Wyoming's traffic laws, but a violation nonetheless. Having witnessed a traffic violation, Chatfield was amply justified in stopping the offending motorists.

*Terry*'s second prong requires the officer's subsequent actions to be reasonably related in scope to the circumstances which justified the stop. 392 U.S. at 20. Put another way, the detention's scope must be tailored to fit its underlying justification. *Ozbirn*, 189 F.3d at 1199. Mr. Smith contends that Trooper Chatfield exceeded the permissible bounds of the traffic stop by questioning Smith, the car's passenger, about his travel plans. "There is no case

-4-

law," Mr. Smith insists, permitting law enforcement officers to question the passenger in a stopped vehicle. Smith Br. 12. This argument is wholly without merit. Our precedent explicitly and repeatedly affirms the right of an officer to question both the driver and her passenger as part of a routine traffic stop. *See, e.g., United States v. Rivera*, 867 F.2d 1261, 1263 (10th Cir. 1989) ("Officer Keene could legitimately ask questions relating to the identity and travel plans of Mr. Rivera and Ms. Jones [the passenger] . . . , regardless of Officer Keene's underlying motivation."). *Accord United States v. Galindo-Gonzales*, 142 F.3d 1217, 1222-23 (10th Cir. 1998). *See also United States v. Foley*, 206 F.3d 802, 805 (8th Cir. 2000) (officer may question vehicle occupants besides the driver). The Supreme Court has never questioned an officer's right to interrogate vehicle passengers during a valid *Terry* stop. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 881-82 (1975) (officers performing vehicular *Terry* stops along the border may question "the driver and passengers"). Indeed, the high court has held that an officer may do more than converse with a passenger during a stop, he may order a passenger from the vehicle. *Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997). Trooper Chatfield did not convert a legitimate traffic stop into an unconstitutional detention by asking Mr. Smith about his travel plans.[3]

---

[3] Adjusting his argument later in his brief, Mr. Smith claims "the Courts are restricting"—present tense—"interrogation of a passenger to those items necessary to see if [the driver's] story was correct as to the ownership of the vehicle." Smith Br. 37 n.3. For this proposition he cites *United States v.*

(continued...)

Once an officer has returned the motorists' licenses and other papers and issued any citation he intends to give, he must usually allow them to proceed on their way without additional questioning. *United States v. Patterson*, 183 F.3d 1190, 1193 (10th Cir. 1999). Further detention must be justified by an objectively reasonable suspicion of illegal activity, based on the totality of the circumstances. *United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir. 2001). Mr. Smith and Mr. Jackson claim Trooper Chatfield lacked reasonable suspicion to detain them once he issued Jackson a citation and informed him he was free to leave. We disagree.

At the time Chatfield detained the two motorists in order to conduct a canine sniff, he had observed "abnormal movement in the car by both driver and passenger," as if the men were concealing something beneath their seats. Smith R. vol. 1, doc. 35 at 9-10. He knew that Mr. Jackson did not have a driver's license. He knew that Mr. Jackson's claim never to have obtained a driver's license was false—Jackson's license was, in fact, suspended. He had noticed Mr. Jackson sweating, fidgeting, and exhibiting other signs of extreme nervousness. He had discovered that a third party owned the vehicle. And most significantly, he had listened to the two men recite radically different versions of their travel

[3](...continued)
*Guerrero-Espinoza*, 462 F.3d 1302 (10th Cir. 2006). *Guerrero-Espinoza* says nothing of the sort. That case dealt with a passenger's freedom to leave the traffic stop, not the scope of the officer's questioning.

history.  Mr. Jackson claimed the pair had been in Colorado for nearly a week after driving a "cousin" out from Indiana to visit another "cousin" living in Denver.  Smith R. vol. 4, 14:16ff.  While in the city, he said, the two men attended the funeral of yet a third "cousin," though Jackson admitted he and Mr. Smith were not related in any way.  Smith R. vol. 4, 14:22ff.  Mr. Smith, on the other hand, claimed he and Jackson had been in California and only recently passed through Denver, where they got lost "for a couple of hours."  Smith R. vol. 1, doc. 35 at 10.

We have held that nervousness, *United States v. Soto*, 988 F.2d 1548, 1556 (10th Cir. 1993), and ownership of a vehicle by a third party, *United States v. Mendez*, 118 F.3d 1426, 1431 (10th Cir. 1997), can lend support to a finding of reasonable suspicion as part of the totality of the circumstances.  The defendants' implausible, inconsistent travel stories are the most important factor in this case, however.  Mr. Jackson characterizes the differences in the men's stories as minor, but in fact the discrepancies are startling.  Jackson and Smith could not agree even on which state they had recently visited, much less the purpose of their trip.  When the driver asserts he has passed a week in Denver and the passenger claims to have been in California, while both men insist they have been traveling together the entire time, either there is a tear in the space-time continuum or someone is not telling the truth.  We have found that inconsistent, unbelievable

travel narratives can give rise to reasonable suspicion. *United States v. Kopp*, 45 F.3d 1450, 1453-54 (10th Cir. 1995). This travel story certainly qualifies.

The defendants argue that at least one of the district court's factual findings is clearly erroneous—namely, the court's finding that they were moving about suspiciously in the car before Trooper Chatfield first approached the vehicle. They claim the videotape of the stop shows no such movement and that, further, the district court promised from the bench it would not rely on nervousness in ruling on the motion to suppress. Having reviewed the videotape of the stop, we conclude the district court's finding is not clearly erroneous. The defendants can be seen fidgeting in the car as the officer approaches, perhaps moving items at their feet. Mr. Smith continues to fidget and reach towards the floor while Trooper Chatfield questions Mr. Jackson in the patrol car.

As to the district court's supposed promise not to take the defendants' nervous behavior into account when ruling, we note that the statement in question came in response to Mr. Smith's insistence that the court view the videotape in full during the suppression hearing. Rather than halt the hearing to view the recording, the court pledged to "assume" Mr. Smith's representations about his conduct in the vehicle were accurate. We do not understand the court's comment as a pledge to rule one way or another, or to make a particular factual finding, but rather as an assumption *arguendo* made to facilitate the defendants' presentation.

The record supports the court's factual finding, and in any event, nervousness is but a minor factor in this case, which does not affect the result.

The defendants go on to suggest that none of the factors, standing alone, justified Trooper Chatfield in detaining them. This argument is misconceived. We have said time and again that factors supporting reasonable suspicion must be considered as a whole. *Cortez v. McCauley*, 478 F.3d 1108, 1123 (10th Cir. 2007) (en banc) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). As it happens, the discrepancies in this case between the defendants' travel tales were so chasmic that factor alone would have given rise to reasonable suspicion. Aggregating the factors only makes Trooper Chatfield's suspicion that much more reasonable.

Trooper Chatfield possessed reasonable suspicion at the time he returned the license and registration papers to Mr. Jackson and excused him from the patrol car. Mr. Smith's contention that he was not able to converse with Mr. Jackson before Chatfield began posing more questions, and therefore could not offer valid consent for Chatfield to search the car, is irrelevant. Trooper Chatfield did not need Mr. Smith's consent to conduct a canine sniff—the officer possessed reasonable suspicion—and in any event, Mr. Smith did not give it.

Based on the facts as found by the district court, we conclude Trooper Chatfield did not violate the defendants' Fourth Amendment rights.

## II. Mr. Smith's Sentence

Mr. Smith contends that the statutorily prescribed minimum sentence he received violates his Sixth Amendment rights. His attorney refers this Court to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Harris v. United States*, 536 U.S. 545 (2002), and *United States v. Booker*, 543 U.S. 220 (2005). None of these cases stands for the proposition he claims. In fact, the Supreme Court in *Harris* upheld a mandatory minimum sentence even though it was premised on judicial fact finding. 536 U.S. at 557. *Booker* did not purport to overrule *Harris* or the Court's line of cases, stretching back to *McMillan v. Pennsylvania*, 477 U.S. 79, 93 (1986), which affirms congressional authority to prescribe mandatory minimum sentences by statute.

We have addressed this precise issue before, in precedent Mr. Smith's attorney neglected to cite. *Booker*, we said in *United States v. Harris*, 447 F.3d 1300, 1307 (10th Cir. 2006), "does not apply to statutory minimum sentences." Mr. Smith's Sixth Amendment rights were not violated.

## III. Conclusion

We **AFFIRM** the judgment of the district court.

Entered for the Court,

Michael W. McConnell
Circuit Judge