**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 12 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ARCHIE L. DUNN, III,

Defendant - Appellant.

No. 97-3028
(D. Kan.)
(D. Ct. No. 96-CR-40030)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **TACHA**, and, **KELLY**, Circuit Judges.

Following a jury trial in the United States District Court for the District of Kansas, Defendant Archie Dunn III was convicted of one count of possession of marijuana with intent to distribute. He now appeals, arguing that both the initial stop and the continued detention of his vehicle, which led to discovery of the marijuana, were improper. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## Background[1]

At approximately 4 p.m. on March 9, 1996, Trooper Dennis Gassman of the Kansas State Highway Patrol was traveling on Interstate 70 in Russell County, Kansas, behind a Crown Victoria with Arizona tags, later determined to be driven by defendant Archie Dunn. As he was following the Crown Victoria, Trooper Gassman observed the car swerve to the right over the solid white line marking the edge of the lane. The relevant section of I-70 is fairly straight and has a slight grade. Trooper Gassman estimated that the wind that day was probably less than twenty miles an hour.

Based on his observation of the car swerving over the white line, the officer pulled over the Crown Victoria. He asked the driver for his license. Upon learning that the driver was Archie Dunn of Durham, North Carolina, he became suspicious because earlier that afternoon he had run a registration check on a black Mustang on I-70 that turned out to be registered to an Archie Dunn of Durham, North Carolina. Defendant informed the officer that the Crown Victoria was a rental car but could not produce the rental agreement. The officer then

---

[1] In reviewing the denial of a motion to suppress, we usually accept the district court's findings of fact unless clearly erroneous. See United States v. Botero-Ospina, 71 F.3d. 783, 785 (10th Cir. 1995), cert. denied, 116 S. Ct. 2529 (1996). In this case, however, the district court did not make any formal findings of fact when it denied defendant's motion to suppress; therefore, our review of the facts is de novo. See United States v. Soria-Garcia, 947 F.2d 900, 902 n.1 (10th Cir. 1991). The following summary of events represents the uncontested facts as culled from the record.

received a dispatch informing him that the car was overdue for return, that Archie Dunn had not rented the car and was not an authorized driver, and that the company wanted the car impounded. The officer leaned into the car to return the registration and insurance information to the glove compartment. At this time, he noticed a strong smell of raw marijuana. He searched the trunk of the car and found approximately 256 pounds of marijuana in brick form. The trooper then arrested Dunn for possession of marijuana.

Defendant was charged under 21 U.S.C. § 841(a)(1) with one count of possession of marijuana with intent to distribute. He filed a pretrial motion to suppress the evidence seized during the stop of his car, arguing that the stop was unjustified. The district court denied the motion. The case proceeded to a jury trial and defendant was convicted. He now appeals the denial of his motion to suppress.

**Discussion**

Defendant seeks suppression of the evidence on the grounds that the stop of his car and the continued detention were unreasonable and thus violated the Fourth Amendment. The ultimate determination of reasonableness under the Fourth Amendment is a question of law which we review de novo. See United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir. 1995), cert. denied, 116 S. Ct. 1519 (1996).

1.	The Initial Stop of Defendant's Vehicle

Defendant contends that the initial stop of the vehicle he was driving was unjustified. The Supreme Court has held that a traffic stop is proper if the officer has probable cause to believe a traffic law has been violated, regardless of pretext or ulterior motive on the part of the officer. See United States v. Whren, 116 S. Ct. 1769 (1996). Thus, we must determine whether Trooper Gassman had probable cause to believe defendant had committed a traffic violation with the single incident of swerving onto the right shoulder of the highway.

The Kansas traffic statute at issue here, KAN. STAT. ANN. § 8-1522, reads in relevant part:

> Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules . . . shall apply.
>     (a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

Dunn asserts that the phrase "as nearly as practicable" permits some leeway and does not allow strict enforcement of the statute, so that the trooper was not justified in stopping him based on his single incident, over a 20-mile distance and on a windy day, of swerving. The defendant relies upon our decision in United States v. Gregory, 79 F.3d 973 (10th Cir. 1996). There, we held that a single incident of swerving to the right into the emergency lane did not constitute a

violation of Utah law.[2] See id. at 978.

Contrary to defendant's assertions, however, Gregory did not establish a bright-line rule that a single instance of swerving could never constitute a violation of the statute, but rather held that under the particular circumstances of that case, the motorist's single swerve did not provide sufficient justification for a stop. In Gregory, we conducted a fact-specific inquiry and emphasized that, in addition to windy conditions, "[t]he road was winding, the terrain mountainous."[3] Id. In contrast, the section of I-70 along which Dunn was traveling was straight with a slight grade, not winding and mountainous. Moreover, although we did not specifically rely on this factor in deciding Gregory, we note that the defendant in Gregory was driving a U-Haul truck, a vehicle that is more difficult to control than the sedan Dunn was driving. Thus, although Gregory and the present case involve very similar statutes, the facts of the two cases are distinguishable. In

_____

[2] The Utah traffic statute at issue in Gregory is virtually identical to the Kansas law at issue here. The Utah statute reads in relevant part:
On a roadway divided into two or more clearly marked lanes for traffic the following provisions apply:
    (1) A vehicle shall be operated as nearly as practical entirely within a single lane and may not be moved from the lane until the operator has determined the movement can be made safely.
UTAH CODE ANN. § 41-6-61(1) (1988).

[3] Gregory relied in part on State v. Bello, 871 P.2d 584 (Utah App. 1994), a case in which the Utah Court of Appeals similarly conducted a fact-specific inquiry before finding that the defendant's single swerve did not violate the Utah statute. See id. at 586-87 (noting that it was "extremely windy" and that "Bello's truck had a camper shell that caused it to catch the wind more easily than other vehicles").

light of the circumstances present in this case, we find that Trooper Gassman had probable cause to believe defendant had committed a violation of K.C.A. § 8-1522. Thus, there was no Fourth Amendment violation.

    2.    Continued Detention and Search of the Vehicle

As part of a routine traffic stop, an officer may request a driver's license and vehicle registration, run a computer check, and issue a citation. See United States v. Guzman, 864 F.2d 1512, 1519 (10th Cir. 1988), overruled on other grounds by Botero-Ospina, 71 F.3d at 786-87. If the driver produces a valid license and proof that he is entitled to operate the car, the officer must allow him to proceed on his way. See id. Here, upon stopping defendant's vehicle, the officer asked defendant for his driver's license and, because the car was a rental vehicle, the rental agreement. Dunn was unable to produce the rental agreement. Additional investigative detention was warranted because Dunn could not demonstrate that he was entitled to operate the car. See United States v. Jones, 44 F.3d 860, 872 (10th Cir. 1995).

Upon checking with the rental company, the officer learned that the car was overdue, that Archie Dunn was not an authorized operator, and that the company wished to have the car impounded. Under these circumstances, Dunn does not have standing to challenge the search or seizure of the vehicle. "[A] defendant in sole possession and control of a car rented by a third party has no standing to

challenge a search or seizure of the car." Jones, 44 F.3d at 871 (citing United States v. Obregon, 748 F.2d 1371, 1374-75 (10th Cir. 1984)).  Thus, Dunn cannot argue that the evidence found during the trooper's search of the car should be suppressed.

For these reasons, we hold that neither the initial stop of the defendant's car nor the continued detention violated defendant's Fourth Amendment rights. Thus, we AFFIRM the district court's ruling on defendant's motion to suppress.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge