**UNITED STATES of America,
Plaintiff,**

v.

**Luis VILLANUEVA, Jr., Defendant.**

**No. 01–40049–01–DES.**

United States District Court,
D. Kansas.

Aug. 1, 2001.

Randy M. Hendershot, Office of U.S. Atty., for US.

Ronald E. Wurtz, Office of Federal Public Defender, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant's Motion to Suppress Evidence and Statements (Doc. 20). The government has filed a Response (Doc. 22). On July 27, 2001, the court held an evidentiary hearing on defendant's motion. After consideration of the evidence received at the hearing and the parties' filings, the court denies the motion for the following reasons.

## I. BACKGROUND

### A. Procedural History

On May 29, 2001, the government filed an information in this case. The information charges that on or about April 13, 2001, in the District of Kansas, defendant did knowingly and intentionally possess with the intention to distribute approximately 286 pounds (130 kilograms) of a mixture or substance containing a detectable quantity of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1).

### B. Relevant Factual History

On April 13, 2001, at approximately 1:30 a.m., defendant was driving alone northbound on Interstate 35 ("I–35") in Lyon County, Kansas. Deputy Daniel K. Knowles of the Lyon County Sheriff's Department passed defendant traveling south on I–35. Deputy Knowles believed defendant's vehicle was traveling in excess of the posted speed limit, so he turned his patrol cruiser around in an effort to follow the vehicle. The northbound lane of I–35 in question had been reduced to a single lane of traffic due to on-going construction. When able, Deputy Knowles checked the speed of the vehicle, which was in fact traveling under the posted speed limit. Deputy Knowles also observed that the vehicle bore a California license plate.

Deputy Knowles continued following the vehicle for approximately one and a half miles. Within this time, Deputy Knowles observed the vehicle veer over the left yellow lane marker on three separate occasions. After the third incident, Deputy Knowles activated his emergency lights and pulled the vehicle over.

Deputy Knowles made contact with defendant and inquired if he was "OK" to be driving. Defendant replied he was fine. Deputy Knowles asked for defendant's relevant documentation. While standing outside the vehicle, Deputy Knowles smelled a strong odor of detergent and coconut emanating from the vehicle. He also noticed bedding material in the front seat. Deputy Knowles testified he was suspicious of the vehicle because: (1) detergent is a common masking agent; (2) I–35 is commonly used to transport drugs north; (3) drug couriers routinely travel from southern states to destinations in the north, and (4) drug couriers generally sleep in their vehicles.

Deputy Knowles returned to his cruiser and checked defendant's license through dispatch. His license returned with no outstanding warrants. Deputy Knowles went to defendant's vehicle and issued defendant a warning for crossing the yellow lane marker. Defendant's documents were returned, and Deputy Knowles told defendant he was free to leave. He then asked defendant if he could ask him a few additional questions. Defendant responded "OK." Deputy Knowles asked defendant if he was transporting any illegal drugs, guns, or alcohol. Defendant replied in the negative. Deputy Knowles also asked if defendant possessed any large sums of currency. Defendant replied he was a "gambler," and defendant informed Deputy Knowles he had $5,000 in cash on his person. Deputy Knowles then asked for defendant's permission to search the vehicle's trunk. Defendant replied "OK," and he activated a trunk release switch located in the glove compartment. After defendant had consented, but before the trunk was actually searched, a second officer, Ted Wallender of the Sedgwick County Sheriff's Department, arrived on the scene.

The subsequent search of the trunk revealed the 286 pounds of marijuana at issue in this case. Defendant was placed in custody, and both he and the vehicle were eventually transported to the Lyon County Sheriff's Department. While in custody, defendant was interviewed by DEA Agent Ron Anson. Defendant made several incriminating statements to Agent Anson.

Defendant seeks suppression of the marijuana seized and his statements made to Agent Anson.

## II. DISCUSSION

In considering defendant's motion, the court must analyze in chronological order the events leading up to the seizure of the marijuana. This consideration begins with the initial stop of defendant's vehicle.

### A. Stop of the Vehicle

■ Deputy Knowles's decision to stop defendant's vehicle and detain defendant constitutes a seizure within the meaning of the Fourth Amendment. *See Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Therefore, the stop is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Traffic stops are reasonable under the Fourth Amendment if the officer (1) has probable cause to believe a traffic violation has occurred, *see, e.g., Whren,* 517 U.S. at 810, 116 S.Ct. 1769, or (2) has "a reasonable articulable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." *United States v. Ozbirn,* 189 F.3d 1194, 1197 (10th Cir.1999) (internal quotation marks and citations omitted). The court, therefore, must determine if Deputy Knowles had probable cause or a reasonable suspicion to stop defendant. *See United States v. Botero–Ospina,* 71

F.3d 783, 788 (10th Cir.1995) (en banc). Finally, the court will not, in its determination of the constitutionality of a traffic stop, consider the subjective motivations of the officer involved. *Whren,* 517 U.S. at 813, 116 S.Ct. 1769. Instead, the court will consider only the question of probable cause or reasonable suspicion. *Id.*

■ The government argues Deputy Knowles stopped defendant because he witnessed a traffic violation; specifically defendant's vehicle swerving outside the lane of traffic. Such driving may be a violation of Kansas law. The pertinent statute states: "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." Kan. Stat. Ann. § 8–1522. The government contends Deputy Knowles observed sufficient weaving to establish probable cause that defendant had violated Kansas law.

■ Defendant argues the statutory language does not allow strict enforcement of the above statute. To this end the Tenth Circuit has held, "the use of the phrase 'as nearly as practicable' in the statute precludes such absolute standards, and requires fact-specific inquiry to access whether an officer has probable cause to believe a violation has occurred." *Ozbirn,* 189 F.3d at 1198. Probable cause is not automatically established by an officer observing someone drive outside the marked lane. *See id.*

In further support, defendant relies on *United States v. Gregory,* 79 F.3d 973 (10th Cir.1996). In *Gregory,* while interpreting a substantially similar Utah statute, the Tenth Circuit held that an officer did not have probable cause when he observed the defendant's vehicle weave once into an emergency lane. *Id.* at 978. Defendant contends *Gregory* compels the court to find Deputy Knowles lacked prob-

able cause. However, the facts in *Gregory* are distinguishable. In *Gregory,* the defendant was driving a U–Haul truck on winding mountainous roads during windy driving conditions. *Id.* The facts of this case indicate defendant crossed the lane marker three times within a short distance on a relatively flat section of roadway in fair weather conditions. Although defendant was driving at night through a construction zone, the three instances of deviation satisfactorily distinguish this case. Therefore, contrary to defendant's assertion, the court's decision is not mandated by *Gregory.* Instead, the court must consider the events surrounding defendant's breaches over the lane marker to determine if Deputy Knowles had probable cause to stop defendant.

In an unpublished opinion, which involved a motorist driving a sedan on a straight section of interstate with little wind, the Tenth Circuit held that a single swerve over the line was sufficient to generate probable cause. *See United States v. Dunn,* 133 F.3d 933 (10th Cir.1998) (table) (considering Kan. Stat. Ann. § 8–1522). In *Dunn,* the circuit court made clear that *Gregory* did not establish a bright-line rule, and the court emphasized the differences between driving conditions in distinguishing *Gregory. Id.* While construction zones do present a greater challenge to drivers, the evidence presented at the hearing demonstrated no credible justification for defendant's multiple breaches over the lane marker. Considering defendant swerved three times in less than two miles, the court finds Deputy Knowles had probable cause to believe defendant was violating Kansas law. *See Ozbirn,* 189 F.3d at 1198 (holding officer had probable cause when defendant swerved out of lane twice on a sunny, windless day while traveling up a slight grade).

In the alternative, the government contends the traffic stop was supported by Deputy Knowles's reasonable suspicion defendant was either falling asleep or driving while impaired. Deputy Knowles credibly testified he originally was concerned defendant may have been impaired or asleep. Considering the facts already presented and in light of the early morning hour, the court finds Deputy Knowles had sufficient reasonable suspicion to believe defendant may have been driving while impaired or asleep. *See id.* at 1199 (finding reasonable suspicion of impaired driving when defendant swerved twice out of lane). *See also United States v. Lee,* 73 F.3d 1034, 1038 (10th Cir.1996) (straddling center line supported reasonable suspicion the driver was sleepy or intoxicated). *Cf. Gregory,* 79 F.3d at 978 (finding no reasonable suspicion of impaired driving even though driver drifted out of lane because officer testified he had no intention of conducting a DUI investigation). Therefore, under either theory, the stop was justified, and suppression will be denied as to this issue.

**B. Scope of the Stop and Consent**

■ Defendant next argues Deputy Knowles illegally extended defendant's traffic stop, so making his consent for the search of the trunk a product of an illegal detention. The detention associated with a traffic stop "must be 'reasonably related in scope to the circumstances which justified the interference in the first place."' *United States v. Anderson,* 114 F.3d 1059, 1063 (10th Cir.1997) (quoting *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Detentions that extend beyond their scope without justification become illegal, and "[e]vidence seized in a search conducted during an illegal detention must be suppressed unless there is sufficient attenuation between the detention and the consent to search." *United States v. Turner,* 928 F.2d 956, 958 (10th Cir.1991) (citing *United States v. Gonzalez,*

763 F.2d 1127, 1133 (10th Cir.1985)). If an officer wishes to detain an individual beyond the scope of the original stop, then he must have an articulable, reasonable suspicion that the driver has violated or is violating the law or show that the police/citizen encounter was purely voluntary. *See United States v. Sandoval,* 29 F.3d 537, 540 (10th Cir.1994).

■ It is undisputed that Deputy Knowles's questions regarding contraband went beyond the scope of the original stop. *See United States v. Holt,* 229 F.3d 931 (10th Cir.2000) (holding questions regarding contraband were beyond the reasonable scope of a traffic stop). The government argues, however, that the questions were asked after defendant and Deputy Knowles's encounter had transformed from a detention into a voluntary exchange. *See Turner,* 928 F.2d at 958 ("[O]nce the officer has returned the driver's license and registration in a routine traffic stop, questioning about drugs and weapons or a request for voluntary consent to search may be 'an ordinary consensual encounter between a private citizen and a law enforcement official.'") (quoting *United States v. Werking,* 915 F.2d 1404, 1408 (10th Cir.1990)).

■ The court must consider the totality of the circumstances to determine whether an encounter is voluntary. *See Florida v. Bostick,* 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). However, because Deputy Knowles returned defendant's documents, he was detained only if he had "an objective reason to believe that he was not free to end his conversation with the law enforcement official and proceed on his way." *Werking,* 915 F.2d at 1408. *See also United States v. Anderson,* 114 F.3d 1059, 1064 (10th Cir.1997) (noting that an officer need not specifically tell the driver that he is free to leave for the encounter to be consensual).

The court considers the following factors in determining whether Deputy Knowles demonstrated a coercive show of authority to such an extent that a reasonable person would not have felt free to leave: (1) presence of more than one officer; (2) display of a weapon; (3) physical touching; (4) use of commanding tone of voice indicating that compliance may be compelled; (5) whether the encounter occurred in a nonpublic place; and (6) whether the encounter took place in a small enclosed space. *See United States v. Laboy,* 979 F.2d 795, 798 (10th Cir.1992); *Turner,* 928 F.2d at 959.

In the present case, besides the addition of a second officer, none of the above factors tend to show that the actions of Deputy Knowles would indicate to a reasonable person they were not free to leave or terminate the encounter. *See Turner,* 928 F.2d at 958–59 (finding no coercive show of authority). *Cf. United States v. Garrett,* 47 F.Supp.2d 1257, 1265 (D.Kan. 1999) (finding encounter was not consensual when one defendant was requested to remain in the patrol vehicle). Additionally, Deputy Knowles told defendant he was free to leave and sought defendant's permission to ask the additional questions. *See United States v. Gigley,* 213 F.3d 509, 514 (10th Cir.2000) ("The consensual encounter began when Defendant granted [Trooper] Smith permission to ask her some questions."). Finally, and perhaps most importantly, defendant testified that he indeed felt free to leave after Deputy Knowles returned his documents.

Considering the above analysis and defendant's own testimony, the court finds that after Deputy Knowles returned defendant's documents and sought permission to ask defendant additional questions, Deputy Knowles and defendant engaged in a consensual exchange. Within this consensual conversation, defendant gave Deputy Knowles permission to search the vehicle's trunk. Therefore, contrary to defendant's argument, the consent to search the trunk was not the product of an illegal detention. Suppression will be denied as to this issue.

## C. Incriminating Statements

Defendant argues his statements should be suppressed as "fruit" of the illegal stop and/or search. Having found no illegality in either the original stop or subsequent search, defendant's argument is without merit. Suppression will be denied as to this issue.

## D. Racial Profiling

Defendant asserts Deputy Knowles targeted him for investigation based on his Hispanic ancestry. Reflecting a national trend, racial allegations are made in an alarmingly high number of cases before this court. The implication and veracity of such allegations is now the product of national debate. In this case, however, the allegation is remarkably lacking in merit. There is absolutely no indication defendant's ethnicity motivated Deputy Knowles. In fact, Deputy Knowles testified he was unable to discern any characteristics about the vehicle's driver before he initiated the traffic stop. Considering the vehicles were traveling in opposite directions on a divided highway at night, defendant has offered no justification for discrediting Deputy Knowles's testimony. Therefore, the court summarily dismisses this allegation, and suppression will be denied as to this issue.

**IT IS THEREFORE BY THIS COURT ORDERED** that defendant's Motion to Suppress Evidence and Statements (Doc. 20) is denied.