## UNITED STATES of America, Plaintiff,

v.

## David L. TRISKA, Defendant.

## Criminal Action No. 07–40018–01–KHV.

United States District Court, D. Kansas.

Aug. 28, 2008.

Jason R. Coody, Office of United States Attorney, Topeka, KS, for Plaintiff.

## MEMORANDUM AND ORDER

KATHRYN H. VRATIL, District Judge.

On March 21, 2007, a grand jury indicted David L. Triska with possession with intent to distribute some 616 kilograms of a mixture and substance containing marijuana in violation of 21 U.S.C. § 841(a)(1)

and (b)(1)(B). This matter is before the Court on defendant's *Motion To Suppress All Evidence Derived From An Unlawful Search And Seizure* (Doc. # 17) filed July 18, 2007. On March 25, 2008, the Court held an evidentiary hearing. The parties have submitted supplemental briefing. For reasons stated below, the Court overrules defendant's motion.

### Facts

Based on testimony and exhibits received at the hearing, the Court finds the following facts:

On March 6, 2007 at approximately 8:25 a.m., Trooper Christopher Nicholas of the Kansas Highway Patrol observed a 2004 Ford F250 pickup truck on Interstate 70 near Maple Hill, Kansas. The truck, which had an Arizona license plate, was pulling a homemade two-axle flatbed trailer with an Idaho license plate. Trooper Nicholas is authorized to perform commercial vehicle safety inspections. He understood that the F250 truck had a gross vehicle weight rating of 8,800 pounds and he thought that the flatbed trailer had a gross weight of at least 1,500 pounds so that the total gross weight rating of the vehicle and trailer was 10,001 pounds or more.[1] Trooper Nicholas noticed three large square objects on the trailer which were marked as ocean or lake buoys. He believed that defendant's vehicle was subject to the commercial vehicle regulations and that he could stop the vehicle for a safety inspection. Tr. 29, 32. Trooper Nicholas followed the vehicle in his patrol car and observed that the license plate bracket on the truck covered the state of issue on the license plate. Trooper Nicholas also saw the trailer travel over the white fog line by at least one tire width. Tr. 29, 32. Trooper Nicholas did not observe any obstruction in the roadway or

other condition which would explain why the trailer had crossed the fog line. Tr. 31, 95. Trooper Nicholas activated his emergency lights and conducted a traffic stop of the vehicle.

Because the trailer had driven over the fog line, Trooper Nicholas asked defendant, the driver, whether he was tired. Tr. 34–36. Defendant stated that he was not tired, but that he felt sick. *Id.* When Trooper Nicholas asked for defendant's license and insurance, he noted that defendant's hands were shaking and his eyes appeared to be bloodshot. Defendant produced an Arizona commercial driver's license. Tr. 36. Defendant explained that the trailer belonged to a friend and that he was being paid $200 and fuel money to deliver the buoys to a location in Columbus, Ohio. Tr. 36. Defendant told Trooper Nicholas that he was going to Ohio anyway to get a car. Trooper Nicholas asked for the bill of lading and defendant's log book, but defendant could not provide them.

Lt. Richard Jimerson of the Kansas Highway Patrol arrived and spoke with Trooper Nicholas. Defendant told Lt. Jimerson that he had picked up the buoys from a company in San Diego, California and was transporting them to Columbus, Ohio. Tr. 113. Lt. Jimerson asked defendant for shipping papers, but defendant could not produce them. *Id.* Lt. Jimerson and Trooper Nicholas determined that the vehicle and trailer were in excess of the 10,001 pound threshold for a commercial vehicle and should be inspected. Trooper Nicholas noticed that the corners of the buoys were taped with white tape and did not appear to be water repellant. Tr. 97–98. In addition, the strobe lights attached to the buoys had no switches or

---

**1.** Trooper Nicholas understood that under both federal and Kansas law, a vehicle is defined as a commercial vehicle if it is haul-ing for hire and has a gross vehicle weight rating of 10,001 pounds or more. *See* 49 C.F.R. § 393.1; Kan. Admin. Reg. § 82–4–1.

apparent power source. Tr. 42–43, 110–11. When Trooper Nicholas checked the straps, he noticed that the buoys were extremely heavy. Based on defendant's nervous behavior, his failure to produce a log book or shipping documents, the origin and destination of the load, the shape of the buoys, the poor construction of the buoys (including outer mylar finish with tape holding the seams and lettering which was peeling off), and the fact that the "buoys" did not appear to be at all seaworthy,[2] Lt. Jimerson concluded that defendant was probably involved in drug trafficking. Tr. 116–17, 124–26. Trooper Nicholas asked defendant to follow him to the Maple Hill truck stop for a commercial vehicle inspection, and contacted Trooper Craig Phillips to bring his narcotics detection canine.

When Trooper Phillips arrived at the truck stop, a certified narcotics detection dog (Canine Cliff) conducted a sniff of the vehicle and its contents. Canine Cliff showed a strong alert to the trailer and jumped up onto the trailer to sniff the middle of its cargo. Canine Cliff then jumped to the ground and went to the front of the trailer, jumped up and sniffed the cargo at the front. Canine Cliff then returned to the middle of the trailer and gave a positive alert for narcotics by sitting.

The officers opened the "buoys" and discovered black trash bags which contained 616 kilograms of marijuana.

### Analysis

Defendant seeks to suppress the marijuana which officers found in the "buoys" and his statements to officers. Defendant's motion raises two issues: (1) whether Trooper Nicholas had reasonable suspicion to stop defendant's vehicle; and (2) whether officers had probable cause to search defendant's vehicle and the contents of the trailer.

### I. Traffic Stop

 Defendant argues that Trooper Nicholas did not have reasonable suspicion to stop his vehicle. A traffic stop constitutes a seizure for purposes of the Fourth Amendment "even though the purpose of the stop is limited and the resulting detention quite brief." *Brendlin v. California,* — U.S. ——, 127 S.Ct. 2400, 2406, 168 L.Ed.2d 132 (2007) (quoting *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). The Court analyzes the legality of a traffic stop under the investigative detention principles of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In cases of investigatory stops, the Fourth Amendment is satisfied if the officer's action is supported by "reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (internal quotation omitted). Reasonable suspicion requires a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. *Arvizu,* 534 U.S. at 274, 122 S.Ct. 744. In determining whether reasonable suspicion existed, the Court considers the totality of the circumstances, *United States v. Sokolow,* 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), including the collective knowledge of those

---

**2.** Lt. Jimerson testified that he had seen buoys on the Mississippi River and in various oceans, but that he had only seen round or oblong shaped buoys—never a cube-shaped buoy. Tr. 110, 128.

officers involved in the investigation, *United States v. Hinojos*, 107 F.3d 765, 768 (10th Cir.1997). The government bears the burden of proving the reasonableness of the officers' suspicion. *United States v. Salzano*, 158 F.3d 1107, 1111 (10th Cir. 1998); *see also United States v. Lutz*, 207 F.Supp.2d 1247, 1255 (D.Kan.2002) (government must show traffic stop justified by reasonable articulable suspicion of illegal activity).

 Trooper Nicholas testified that he stopped defendant's vehicle because (1) the trailer crossed the white fog line in violation of K.S.A. § 8–1522(a); (2) the vehicle license plate bracket covered the name of the issuing state in violation of K.S.A. § 8–133; and (3) he intended to conduct a commercial vehicle safety inspection under K.S.A. § 74–2108 in light of the apparent weight of the vehicle and trailer and the nature of its cargo. For reasons explained below, the Court finds that the traffic stop was valid on the latter two grounds. In addition, the traffic stop could be upheld on the first ground in conjunction with an alternative ground, *i.e.* that Trooper Nicholas had reasonable suspicion that defendant was falling asleep or was otherwise impaired.[3]

**A. Violation Of K.S.A. § 8–1522(a) And Reasonable Suspicion Defendant Was Falling Asleep Or Impaired**

 The government argues that Trooper Nicholas had reasonable suspicion that defendant had violated K.S.A. § 8–1522(a). Trooper Nicholas saw defendant's trailer drift out of its lane and cross the fog line by at least one tire width. Trooper Nicholas thought that defendant had violated K.S.A. § 8–1522(a) which provides that whenever any roadway has been divided into two or more clearly marked lanes for traffic, "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." The Court need not address whether a single violation of K.S.A. § 8–1522 would establish reasonable suspicion under that statute because the traffic stop is valid on another ground: Trooper Nicholas reasonably suspected that defendant was either falling asleep or driving while impaired. Trooper Nicholas had some concern in this regard. In fact, his first question to defendant was whether he was tired. Tr. 34–36.

---

**3.** Even though Trooper Nicholas did not articulate this ground as a basis for the traffic stop, it is readily apparent from the evidence. Except for the facts that he knows, an officer's state of mind is not ordinarily relevant to the reasonable suspicion and probable cause inquiries. *See Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) (subjective reason for making arrest need not be criminal offense as to which known facts provide probable cause); *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (fact that officer does not have state of mind which is hypothecated by reasons which provide legal justification for his action does not invalidate action taken if circumstances, viewed objectively, justify that action); *United States v. Villamonte–Marquez*, 462 U.S. 579, 584, n. 3, 103

S.Ct. 2573, 77 L.Ed.2d 22 (1983) (dismissing idea that ulterior motive might strip agents of legal justification for search); *United States v. Galindo–Gonzales*, 142 F.3d 1217, 1224 (10th Cir.1998) (reasonableness of officer's questions not limited by his own account of his motivation in asking them). The Fourth Amendment's concern with reasonableness allows certain actions to be taken in certain circumstances, whatever the subjective intent. *Whren*, 517 U.S. at 814, 116 S.Ct. 1769.

The government argues that independent of the observed traffic violations, Trooper Nicholas had reasonable suspicion that defendant was involved in criminal activity. The Court need not address this ground because the other three grounds provide adequate justification for the traffic stop.

A vehicle may be stopped when the officer has a reasonable suspicion that the driver may be falling asleep or is driving while impaired. *See State v. Vistuba,* 251 Kan. 821, 824, 840 P.2d 511, 514 (1992) (vehicle stop permissible if officer has specific and articulable facts to believe that driver is falling asleep) (agreeing with *State v. Pinkham,* 565 A.2d 318, 319 (Me. 1989) (stop "merely for safety reasons" at 2:00 a.m. permissible when vehicle traveled straight ahead from right-turn-only lane)). Based on the drift across the fog line for no apparent reason, the early morning hour and the Arizona license plate, Trooper Nicholas had reasonable suspicion that defendant may have been driving a long distance and was falling asleep or was otherwise impaired. *See United States v. Ozbirn,* 189 F.3d 1194, 1199 (10th Cir.1999) (officer had reasonable suspicion of impaired driving when defendant swerved twice out of lane on sunny, windless day); *United States v. Lee,* 73 F.3d 1034, 1038 (10th Cir.1996) (straddling center line supported reasonable suspicion that driver was sleepy or intoxicated); *United States v. Jones,* 501 F.Supp.2d 1284, 1299 (D.Kan. 2007) (officer had reasonable suspicion that driver was sleepy or impaired because no adverse conditions explained sudden swerve onto shoulder, vehicle had Minnesota license plate, time was early morning and vehicle had been recently driven in weather different from weather in area); *United States v. Villanueva,* 157 F.Supp.2d 1184, 1189 (D.Kan.2001) (officer had reasonable suspicion that driver was sleepy or impaired where driver crossed lane marker three times within short distance in early morning). This alternative ground justified the traffic stop of defendant's vehicle.

### B. *Violation Of K.S.A. § 8–133*

The government argues that the traffic stop was valid because the license bracket on defendant's vehicle covered the name of the issuing state. Defendant does not dispute that the license bracket obscured the name of the issuing state. K.S.A. § 8–133 provides in part as follows:

> Every license plate shall at all times be securely fastened to the vehicle to which it is assigned so as to prevent the plate from swinging, and at a height not less than 12 inches from the ground, measuring from the bottom of such plate, in a place and position to be clearly visible, and shall be maintained free from foreign materials and in a condition to be clearly legible.

K.S.A. § 8–133. According to defendant, Trooper Nicholas did not normally stop vehicles for violation of K.S.A. § 8–133 and from its other features, Trooper Nicholas knew that the license plate was from Arizona. *See* Defendant's *Post Hearing Memorandum Of Law* (Doc. # 48) filed June 2, 2008 at 12. The actual testimony of Trooper Nicholas was that he did not stop "every" vehicle which had a partially obscured license plate and that he had a pretty good idea that defendant's license plate was from Arizona. Tr. 69, 71. An officer's reasonable suspicion of a traffic violation is not undermined, however, by the fact that he does not attempt to enforce every violation. Defendant has offered no basis for a selective enforcement defense. Likewise, the fact that Trooper Nicholas thought that the license plate was from Arizona does not negate his belief that the bracket was obscuring part of the license plate in violation of K.S.A. § 8–133. Trooper Nicholas had reasonable suspicion, and even probable cause, to believe that the license plate display on defendant's vehicle violated K.S.A. § 8–133.

### C. *Administrative Investigation*

The government argues that the traffic stop was valid because Trooper Nicholas thought that defendant's vehicle was operating in a commercial capacity and in violation of administrative regula-

tions. Administrative stops of commercial vehicles are permissible under Kansas and federal law. Under Kansas law, the Kansas Highway Patrol may stop "motor carriers" at any time to check compliance with safety regulations. K.S.A. § 74–2108 (2006); *see United States v. Herrera,* 444 F.3d 1238, 1244–45 (10th Cir.2006) (assuming Kansas law properly permits Kansas Highway Patrol to stop commercial vehicles for safety inspections).

Kansas law defines a "commercial motor vehicle" as one that has "a gross vehicle weight rating or a gross combination weight rating of 10,001 or more pounds." Kan. Admin. Reg. § 82–4–1 (2008). Federal law has a similar definition. *See* 49 C.F.R. § 393.1. Under federal and Kansas law, the gross combination of weight rating ("GCWR") is defined as "the value specified by the manufacturer as the loaded weight of a combination (articulated) motor vehicle." 49 C.F.R. § 390.5; *see* K.S.A. § 66–1,108(b). Absent a value specified by the manufacturer, the GCWR is determined by adding the gross vehicle weight rating of the power unit as specified by the manufacturer and the total weight of the towed unit and any load thereon. *See* 49 C.F.R. § 390.5; K.S.A. § 66–1,108(b), (c).

The Kansas Court of Appeals has interpreted the term "motor carrier" to be a vehicle meeting the weight requirements under K.S.A. § 66–1,108(b) or (c) and operating in a commercial or "for hire" capacity as defined by K.S.A. § 66–1,108(f) and (m). *State v. Campbell,* 19 Kan. App.2d 778, 875 P.2d 1010, 1012–15 (Kan. Ct.App.1994).

In *Campbell,* the Kansas Court of Appeals noted that the objective weight and commercial standards are "neutral criteria to safeguard the individual's reasonable expectation of privacy." *Id.* at 1013–14. The Tenth Circuit also has held that an administrative stop of a commercial vehicle must be objectively justified. *Herrera,* 444 F.3d at 1248. Under *Herrera,* a valid commercial vehicle stop must actually meet the requirements (including weight requirement) of a motor carrier under Kansas law. *Id.* In the context of such inspections, courts do not apply a good faith exception based on an officer's reasonable but mistaken belief the vehicle was a commercial vehicle. *Id.* In other words, the stop is justified if the commercial vehicle satisfies the definition of such a vehicle under Kansas law (which is virtually identical to federal law). Here, defendant's truck and trailer met the definition of a commercial vehicle under Kansas law. Defendant's truck had a gross vehicle weight rating of 8,800 pounds. (Tr. 23, 53; Gov't Exh. 9). Because the trailer did not have a gross vehicle weight sticker, the Kansas Highway Patrol used the actual weight of the trailer and the load, as required by Kansas law. K.S.A. § 66–1,108(b). The trailer with empty buoys weighed 4,374 pounds and the marijuana in the buoys weighed 1,373 pounds. (Tr. 53–54). The gross combination vehicle weight rating therefore exceeded the statutory requirement of 10,001 pounds. Accordingly, Trooper Nicholas could stop defendant's vehicle for a commercial safety inspection under K.S.A. § 74–2108.[4]

## II. Search Of Defendant's Vehicle And Contents Of Trailer

Probable cause to search a vehicle exists if under the totality of the circumstances, a fair probability exists that the

---

**4.** Defendant does not dispute that he was operating as a commercial motor carrier, and Trooper Nicholas reasonably believed that defendant was operating in such a capacity based on the professionally banded pallets in the trailer, the size of the purported buoys, defendant's commercial driver's license and defendant's statement that he was being paid to transport the buoys.

vehicle contains contraband or evidence. *See United States v. Bradford,* 423 F.3d 1149, 1159 (10th Cir.2005). If such probable cause exists, officers may search a vehicle which has been stopped on the road without first obtaining a search warrant. *See id.* (citing *Florida v. Meyers,* 466 U.S. 380, 381, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984) (per curiam)). Under this so-called "automobile exception," police can search every part of the vehicle and its contents which may conceal the object of the search, to the same extent as a magistrate could legitimately authorize by warrant. *See United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

### A. *Moving Defendant To Nearby Truck Stop*

 Defendant apparently challenges the officers' direction to follow them to a truck stop at the next exit.

Safety concerns justify minimally intrusive means that are not unreasonable in light of the purpose and circumstances of a stop. *V–1 Oil Co. v. Means,* 94 F.3d 1420, 1427–28 (10th Cir.1996). In *V–1 Oil,* the Tenth Circuit found that ordering a truck to a port of entry for safety concerns is not unreasonable. *See also Florida v. Royer,* 460 U.S. 491, 504, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (safety and security reasons may justify moving suspect to different location during investigatory detention without making detention unreasonably intrusive). Here, based on the facts which he knew, Trooper Nicholas had two valid grounds to order defendant to the Maple Hill truck stop: (1) to conduct a commercial vehicle safety inspection and

(2) to further ascertain whether defendant's vehicle and the trailer cargo contained contraband. The Court therefore overrules defendant's motion on this ground.

### B. *Inspection Of Defendant's Vehicle And Trailer*

 Liberally construed, defendant's motion challenges the length of his detention and the inspection of his trailer and cargo, pending the search by the narcotics detection dog. The following factors, however, gave the officers ample reason to continue to detain defendant and his vehicle:

1. Defendant was extremely nervous throughout the entire traffic stop and his eyes appeared bloodshot.

2. Defendant did not have a log book or shipping papers for the cargo.

3. Officers determined that in violation of commercial vehicle regulations, the trailer did not have a breakaway brake system.

4. The purported buoys appeared suspicious because they were extremely large, had odd shapes, did not appear to be waterproof (the tape that sealed the edges was wrinkled and coming off) and had lights with no apparent power source. Even to an untrained eye, the purported "buoys" simply appeared to be large boxes which would not be seaworthy or capable of floating.

Based on these factors, officers had reasonable suspicion of criminal activity to further inspect defendant's vehicle and trailer and continue to ask defendant questions.[5]

---

**5.** The detention pending a canine search could also be justified as a valid commercial vehicle safety inspection. A regulatory search does not require probable cause as traditionally defined by the courts. *United States v. Seslar,* 996 F.2d 1058, 1061 (10th Cir.1993).

Instead, a regulatory search is justified if the state's interest in ensuring that a class of regulated persons is obeying the law outweighs the intrusiveness of a program of searches or seizures of those persons. *Id.*

### C. Search Of Purported Buoys

In a supplemental brief, defendant argues that the alert by Canine Cliff was insufficient to establish probable cause because Trooper Phillips and Canine Cliff had a poor record and should not have been certified. A drug dog's alert, without more, is sufficient to establish probable cause to search a vehicle or closed container. *United States v. Rosborough*, 366 F.3d 1145, 1152 (10th Cir.2004). Defendant can rebut the finding of probable cause by showing that the particular drug dog is unreliable. *See United States v. Ludwig*, 10 F.3d 1523, 1528 (10th Cir.1993) (dog alert may not provide probable cause if dog has poor accuracy record). The Tenth Circuit has held that a 70 to 80 per cent reliability rate satisfies the liberal standard for probable cause under *Gates*. *See United States v. Kennedy*, 131 F.3d 1371, 1378 (10th Cir.1997), *cert. denied*, 525 U.S. 863, 119 S.Ct. 151, 142 L.Ed.2d 123 (1998).

Here, Canine Cliff's reliability rate is not specified, but he primarily received superior and commendable scores on his certification tests.[6] Defendant has not presented evidence which would suggest that Canine Cliff is unreliable. Canine Cliff's alert therefore was sufficient to establish probable cause to search the buoys on the trailer.[7] Even before Canine Cliff's alert, the officers had probable cause to search the purported buoys based on the factors outlined above which gave the officers reasonable suspicion of criminal activity.

**IT IS THEREFORE ORDERED** that defendant's *Motion To Suppress All Evidence Derived From An Unlawful Search And Seizure* (Doc. # 17) filed July 18, 2007 be and hereby is **OVERRULED**.

---

6. On the proficiency scale which rates both how well the dog finds narcotics and how well he indicates the presence of narcotics, one is the top rating and is considered superior, two is commendable, three is typical and four is street worthy. The Kansas Highway Patrol only sends canines into the field with ratings of three or higher. Tr. 169.

7. In his initial brief, defendant argued that the search of his Arizona residence was invalid. He apparently relies only on the fact that the basis for the search warrant for his residence was fruit of the unlawful traffic stop and search of his trailer. Because the Court upholds the traffic stop and search of defendant's trailer, the Court overrules defendant's motion on this ground.